769 So.2d 747 (2000)
Beverly Brewer COUVILLION
v.
Michael Jude COUVILLION, Sr.
No. 00-CA-143.
Court of Appeal of Louisiana, Fifth Circuit.
September 26, 2000.
Rehearing Denied October 30, 2000.
*748 Kenneth J. Gelpi, Jr., Terriberry, Carroll & Yancey, New Orleans, Louisiana, Counsel for plaintiff-appellee.
Raymond C. Burkart, Jr., New Orleans, Louisiana, Counsel for defendant-appellant.
Court Composed of Judges CHARLES GRISBAUM, Jr., MARION F. EDWARDS and CLARENCE E. McMANUS.
McMANUS, Judge.
This community property dispute presents for review the trial judge's decision to sign a QDRO[1] dividing Appellant's pension and his having refused to find Appellee in contempt under other provisions of the parties' property settlement. In addition, we are called on to review the decision in which another judge, appointed to hear this motion only, denied Appellant's rule to recuse the trial judge. Finding no error in any of the rulings under review, except to *749 the extent that the QDRO must be modified in one aspect only, we affirm all judgments.

STATEMENT OF THE CASE
This matter was commenced when Appellee, Beverly Brewer Couvillion, filed a Petition for Divorce on April 25th, 1996. Appellant is the former spouse of Beverly, Michael Jude Couvillion, Sr. The parties were ultimately granted a final divorce on December 16th, 1996, and as noted above, the issues here spring not from the divorce itself, but from the parties' community property settlement.
Though the record does not contain a petition to partition the community as such, on June 24th, 1996, Michael filed (as a single pleading) a Motion for Termination of Community Property Regime, Motion to Allow the Sale of Immovable Property, Motion to Allow Use of Property, Motion for Expedited Hearing. The parties each filed sworn descriptive lists, some items of community property were settled on a piece by piece basis, and the parties eventually settled the entire remaining community by means of a consent read into the court record on June 16th, 1997. A written judgment was signed on September 15th, 1997.
Pursuant to the consent judgment, the parties exchanged several drafts of the QDROs called for under the judgment, outlining eventual disposal of each party's retirement benefits. Both parties could not agree on an order regarding Michael's benefits, however, and on June 29th, 1999, Beverly filed a Motion and Memorandum for Issuance of Qualified Domestic Relations Order, asking the judge to sign a draft prepared by her. Shortly before this motion was filed, Michael had filed his own rule for contempt, alleging that Beverly had violated one of the other terms contained in the agreement.
In addition, while trial of these two motions was pending, Michael filed a motion to recuse the trial judge, alleging bias on the judge's part, based on the judge's former relationship with Beverly's family. The matter was promptly referred to another judge of the Twenty-Fourth Judicial District for determination of this issue, and on November 16th, 1999, the matter was heard.[2] This motion was dismissed on November 29th, 1999; the original trial judge, therefore, retained authority to hear the substantive issues.
Michael's rule for contempt and Beverly's motion for issuance of the QDRO were heard November 18th, 1999; Michael's rule was denied and Beverly's granted. A written order was signed on November 29th, 1999; Beverly's QDROdisposing of Michael's retirementwas signed by the trial judge this same day.
Michael's Petition for Devolutive Appeal was filed on December 2nd, 1999, and he now specifies the following errors for our review:
1. The trial court erred in signing the draft prepared by Appellee;
2. The trial court erred in denying Appellant's rule for contempt regarding Appellee's receipt of cash advances on the children of the marriage's life insurance policies without giving Appellant the opportunity to offer evidence on the hearing date;
3. The trial court erred in denying Appellant's motion to recuse Judge Robert M. Murphy as trial judge.

FACTS
The record discloses the following facts regarding the disputed QDRO, the order directing disposition of Michael's eventual pension benefits. At the time of the divorce, Michael was employed with the United States Postal Service, and is therefore *750 entitled to retirement benefits under the Civil Service Retirement System.
At the court proceedings during which the parties made a record of their agreement settling the community, the following stipulations were made with respect to these benefits. After Beverly's attorney stated that the pensions would be "divided" by QDROs, Michael's attorney made the following statements concerning the "QDRO orders,"
"Now, what we have agreed, Your Honor, is if there are any benefits that Mrs. Couvillion wants out of Mr. Couvillion's pension that she so stipulate out of her percentage that she's going to get, not off the top, because we're dealing with the Federal Government here, and we don't want to have to come back and relitigate. So, for example, if she's entitled to 30 percent, if she wants survivor's benefits listed on that 30 percent, any withholding from her monthly payments to make sure that she gets the survivor's benefit by the United States Government will be withheld from hers, not from his and hers...."
The parties were sworn in and both verbally consented to the terms as dictated.
The written judgment, signed by the judge, contains the following provision:
9] the respective pensions of the parties will be divided in accordance with the Sims v. Sims and Hare v. Hodges (sic)[3] formulas; and a QDRO will be prepared and submitted by the plaintiff for the defendant's pension, and a QDRO will be prepared and submitted by the defendant for the plaintiff's pension.
The written judgment contains no provisions regarding any costs associated with distribution of Beverly's share of Michael's pension.
Subsequently, over several months, the parties exchanged versions of an order to settle Michael's pension, each (as much as can be discerned from the copies in the record) containing varying language reflecting the somewhat involved regulations applicable to federal pension benefits. As noted above, however, the parties could not reach an agreement on any one document, and Beverly ultimately filed a rule to have her QDRO signed by the trial judge.
The QDRO filed by Beverly contains the following pertinent provisions:
IT IS ORDERED that BEVERLY BREWER COUVILLION shall receive a marital pro-rata share as defined in section 5 herein of the aforesaid employee retirement annuity, survivor benefits annuities, refunds of employee contributions, cost of living adjustments, and any and all other retirement benefits obtained by Michael Jude Couvillion, Sr., during the term of his marriage to Beverly Brewer Couvillion ...
4. The retirement benefits subject to this Order are the employee annuities, refunds of employee contributions, and survivor annuity ...
5. The computation period for BEVERLY BREWER COUVILLION's pro-rata share shall be based on the total months of service performed during the marital period of the "Employee" and "Former Spouse", 25th September, 1976 through 25th April, 1996 only. Any and all United States Government, Postal Service, and military service performed prior to the date of 25th September, 1976 and after the date of 25th April, 1996, shall be excluded from the "Former Spouse" portion ...
6. ...Pursuant to 5 CFR [§ ]838.1012(b)(3), if BEVERLY BREWER COUVILLION dies before MICHAEL JUDE COUVILLION, SR. the United States Office of Personnel Management is directed to pay BEVERLY BREWER COUVILLION's share of MICHAEL JUDE COUVILLION, SR.'s civil service *751 retirement benefits to BEVERLY BREWER COUVILLION's estate.
The order does not contain any language regarding the costs of administering Beverly's share of the benefits. As noted, the QRDO was signed as submitted by the trial judge.
Regarding Michael's second assignment of error, the contempt rule, the grounds alleged by Michael are that Beverly had, exceeding the authority conferred by the property settlement, borrowed money against two life insurance policies naming the parties' children as beneficiaries. The two policies had first been listed in Beverly's Sworn Descriptive list filed on March 14th, 1997, and are No. 41641847 NYL, naming Michael, Jr., and No. 41641872 NYL, naming Sarah, and the following reference was made to the policies when the parties entered the consent,
"Now, with the stipulation, of course, that Mrs. Couvillion, Beverly Couvillion, cannot cash, get the cash surrender value on these two policies."
As mentioned above, both parties consented to all conditions mentioned during the hearing.
The signed judgment contains the following language regarding the policies:
5] ... the parties agree not to cash the policies in for the cash surrender value in the future.
The judgment does not contain, nor were any statements made during the court proceedings, which specifically mention either party's borrowing against the policies, and Beverly has, apparently, borrowed an undisclosed amount against one or both of the policies.
Regarding Michael's last assignment of error, the recusal, the matter was transferred to be heard by Judge Ronald D. Bodenheimer, Judge of Division "N" of the Twenty-Fourth Judicial District, and at this hearing, the following testimony was given by Judge Robert M. Murphy, Judge of Division "D", the trial judge Michael sought to have disqualified.
Judge Murphy testified that he had, "at one point," "in the late 70's," represented "a Randall Brewer," and that he had also represented Randall's mom "on something"; he could not remember Randall's (Beverly's) mom's name. Judge Murphy testified that though he had possibly represented a male sibling of Randall, he had no memory of a Rodney Brewer. Finally, Judge Murphy testified that there was no question that he could remain fair and impartial rendering judgment in the instant matter: he testified that though he could remember "a sister" of Randall, he did not know or recognize either Michael or Beverly "at all."
Michael testified that he remembered Judge Murphy's having done work for the Brewer family, and specifically that Judge Murphy had represented a Rodney Brewer. In addition, Michael testified that he remembered Beverly having delivered family papers to Judge Murphy's office.
In his reasons for denying Michael's motion to recuse Judge Murphy, Judge Bodenheimer stated,
"I believe that the mover in this case has failed to meet his burden of proof that Judge Murphy wouldn't be fair or impartial in any kind of way, shape or form. Even if Judge Murphy had some sort of a relationship with Ms. Brewer's relatives, it should not flow over to Ms. Brewer and to Mr. Couvillion."

ASSIGNMENT OF ERROR NUMBER ONE
As his first assignment of error, Michael argues that the trial judge was in error for having signed the QDRO submitted by Beverly: he argues that the order deviates from the consent judgment which divided the community property and under which the order is required. We do find merit in one of the errors cited which requires a minor change in the QDRO in order for it to comply with the parties' agreement; *752 other than requiring this one change, we find the QDRO unobjectionable. The trial judge was correct to have signed it.
Michael first suggests that the QDRO awards Beverly benefits to which she is not entitled: Michael suggests that the order awards Beverly a share of benefits earned beyond the existence of the parties' community. However, contrary to this suggestion, the QDROin several placesplainly limits Beverly's benefits to a share of those acquired during her marriage to Michael, specifically limiting her benefits to those "based on the total months of service performed during the marital period of the employee and former spouse." This argument is without merit.
Michael next argues that the QDRO allows Beverly to designate a successor for her benefits "without his consent." Michael is correct, in part. The consent judgment does not address the contingency of either party's death while retirement benefits are being distributed. On the other hand, however, Michael does err when he asserts that Beverly needs his consent: his consent is not required however Beverly wishes to dispose of her own assets. We remind Michael that Beverly earned a share of all retirement benefits acquired during the marriage; her share of such benefits is owned by her. LSA-C.C. art. 2338; Bordes v. Bordes, 98-1004, at 3 (La.4/13/99), 730 So.2d 443, 445; Frazier v. Harper, 600 So.2d 59, 61 (La.1992); Sims v. Sims, 358 So.2d 919, 922 (La. 1978). Further, the federal regulations applicable provide a mechanism which allows Beverly to provide for continued distribution of her share, after her death and to her estate, through the agency responsible for administering Michael's pension. See 5 C.F.R. § 838.237(b)(3); 5 C.F.R. § 838.1012(b)(3). If such regulations provide Beverly with a convenient avenue to provide for distribution of her assets to her estate, the decision to take advantage of this feature is hers alone. This argument has no merit.
We do find merit in Michael's final objection to the QDROthat it does not require Beverly to pay any expenses connected with administration of her share of the benefits she receives as part of his pension. Though the written judgment dividing the community does not include such a provision, the consent as read into the court record does include one. When the parties read the consent into the record, reference was quite clearly made to "Mr. Couvillion's pension," and Beverly verbally agreed to terms under which the costs associated with distribution of her share of the benefits would be "withheld from her" share. We cannot speculate on why this provision was not included in the written judgment; we only note that there is nothing in the judgment at variance with Beverly's oral consent to this particular term. We therefore agree with Michael's suggestion that such language must be added to the QDRO so that it will agree with the parties' consent regarding costs of distribution of Michael's pension.

ASSIGNMENT OF ERROR NUMBER TWO
As Michael's second assignment of error, he argues that the court was in error for having failed to find Beverly in contempt of court without having allowed him to offer evidence to prove the charge. We find the record as it stands adequate for a determination of this issue, and further, the record leaves no doubt that the trial judge was correct in having denied the motion for contempt.
Michael argues that Beverly violated the parties' community property settlement when she made a loan (or loansthe record is not clear) against a life insurance policy (or policies) which lists (list) the parties' child (children) as beneficiary(ies). However, neither the oral consent nor the written judgment disposing of the community prohibits Beverly from having made such loans: the community property agreement prohibits Beverly only from *753 surrendering, or "cashing in," the policy(ies) for a present value.
Constructive contempt is defined as "wilful disobedience of any lawful judgment, order, mandate, writ, or process of the court." LSA-C.C.P. art. 224; Moises v. Moises, 97-1208, at 9 (La.App. 5 Cir. 4/15/98), 710 So.2d 1191, 1195. Further, even those judgments entered by consent give rise to a motion for contempt. Parish of Jefferson v. Lafreniere Park Foundation, 98-345, at 6 (La.App. 5 Cir. 9/15/98), 720 So.2d 359, 363-4, writ denied, 98-2598 (La.10/28/98), 723 So.2d 965. A finding of wilful disobedience, however, presupposes the existence of such an order and actual disobedience of it. And the record shows without any question that there was no agreementno judgment or orderwhich prevented Beverly from having simply borrowed against the policy(ies).
The trial judge was not in error for having not taken additional evidence: Michael could not show contempt on the facts alleged. The judge was correct in having denied the motion for contempt.

ASSIGNMENT OF ERROR NUMBER THREE
As Michael's final assignment of error, he argues that Judge Bodenheimer was in error for having not granted his motion to recuse Judge Murphy. There is no question that Judge Bodenheimer's decision was correct. The record contains nothing more than Michael's conclusory allegations of bias, completely unsubstantiated by any basis in fact.
A trial judge may be recused when he is "biased, prejudiced, or interested in the cause or its outcome or biased or prejudiced toward or against the parties or the parties' attorneys to such an extent that he would be unable to conduct fair and impartial proceedings." LSA-C.C.P. art. 151 B(5). However, a judge is presumed to be impartial. The party seeking to recuse cannot merely allege lack of impartiality; he must present some factual basis. And bias, prejudice, or personal interest must be of a substantial nature and based on more than conclusionary allegations. Tamporello v. State Farm Mut. Auto. Ins. Co., 95-458, at 6 (La.App. 5 Cir. 11/15/95), 665 So.2d 503, 506 (citations omitted; emphasis supplied).
Michael bases his allegations of prejudice on the fact, acknowledged by Judge Murphy, that the Judge had represented some members of Beverly's family in past years. This fact itself, however, does not create any presumption of prejudice. See, for example, Barham v. Barham, 337 So.2d 289, 291-2 (La.App. 2 Cir. 1976). Nor were the facts presented at the hearing to recuse otherwise sufficient to show prejudice on Judge Murphy's part.
Michael's memory of Judge Murphy's representation of Beverly's family was somewhat confused, and his statements were contradicted in several respects by Judge Murphy. Michael's testimony, therefore, was inconclusive to demonstrate any facts which would have buttressed the claim of prejudice. Michael also was unable to identify any action taken by Judge Murphyup to the point of the recusal hearingwhich did demonstrate any prejudice or bias on the judge's part. He has not made any such showing here.
At the hearing, Judge Murphy stated without equivocation that his handling of the matters remaining between Michael and Beverly would be fair and impartial; Judge Bodenheimer accepted these assertions without hesitation. We find no manifest error in Judge Bodenheimer's findings.
Therefore, for the above reasons, we affirm Judge Bodenheimer's ruling on Michael's rule to recuse Judge Murphy. We further order Appellee to prepare an amended QDRO, modified only to the extent that it requires her to pay any costs associated with distribution of her share of Michael's pension, and to submit the amended QDRO to Judge Murphy for *754 signing. In all other respects, all other judgments are affirmed.
ALL JUDGMENTS AFFIRMED; APPELLEE ORDERED TO AMEND QDRO AS DIRECTED IN OPINION.
NOTES
[1] A Qualified Domestic Relations Order (QDRO) is utilized when unmatured retirement benefits in the name of a divorcing spouse are not easily assigned a "present" value for partitioning and is issued in the form of a judgment recognizing the non-employed spouse's right to receive some portion of the benefits as they are paid out. See Blanchard v. Blanchard, 97-2305, at 6-7 (La.1/20/99), 731 So.2d 175, 179. Because Appellant's pension will be administered by the federal government, the QDRO here must qualify as a "court order acceptable for processing." See 5 C.F.R. § 838.101 and sections following. These rules require a judge's signature on the order.
[2] The filing of the motion to recuse triggers a transfer of the matter for hearing on this motion by another judge sitting in the same judicial district. LSA-C.C.P. articles 154 through 157.
[3] Sims v. Sims, 358 So.2d 919 (La.1978); Hare v. Hodgins, 586 So.2d 118 (La.1991).