LILJEBERG, J. | tIn this medical malpractice case, plaintiffs, Brenda Lindsey, Sylvia Davis, Jocelyn Joseph, and Shelia Glover, individually and on behalf of the Estate of Ethel Mae Glover, appeal the trial court judgments granting the exceptions of prescription filed by defendants and dismissing plaintiffs’ claims against them. For the following reasons, we reverse and remand for further proceedings. FACTS AND PROCEDURAL HISTORY On March 9, 2015, Ethel Mae Glover was admitted to Tulane Medical Center, where she was diagnosed with having suffered a stroke. On March 17, 2015, at the request of Ms. Glover’s family, she was transferred to Ochsner Foundation Hospital (“Ochsner”) for “ongoing stroke management” and treatment. While at Ochs-ner, Dr. Iwuchukwu, who was known to the Glover family as “Dr. Obie” and/or “Dr. Arden,” was Ms. Glover’s attending physician and oversaw her treatment. Plaintiffs contend that Ms. Glover had several issues during her treatment at Ochsner. According to plaintiffs, although Ms. Glover’s chart' indicated that she was allergic to iodine and iodide-containing products, she underwent a CT scan with iodine contrast of the abdomen and pelvis and suffered an allergic reaction. They also contend that there were problems with the proper placement of an NGT (nasogastric tube), and she also suffered a pseudomo-nas urinary tract infection (“UTI”) ultimately causing septic shock. Ms. Glover underwent surgery for placement of a PEG (percutaneous endoscopic gastronomy) tube on April 1, 2015. According to plaintiffs, they expressed concerns with their mother’s treatment to Dr. Iwuchuk-wu and he assured them that the problems were “under control.” Ms. Glover passed away on April 12, 2015. Her death certificate listed the causes of death as follows: a) septic shock, b) UTI, c) acute respiratory failure, and I ad) CVA,[1] Due to their concerns about Ms. Glover’s treatment while at Ochsner, the Glover family arranged for a private autopsy, which was performed on April 14, 2015. The autopsy report, which was provided to the Glover family on or about June 17, 2015, revealed that the primary cause of death was chemical peritonitis. The report further indicated that the “cerebral infarct contributed to her death secondary to the decedent requiring a gastric tube which subsequently became dislodged and contributed to” the chemical peritonitis. On behalf of the Glover family, Brenda Lindsey, one of Ms. Glover’s daughters, filed a pro se request for a medical review panel, alleging malpractice by Ochsner and “Dr. Obie” or “Dr. Arden.” This request was dated April 8, 2016 and was sent via facsimile to the Louisiana Division of Administration (“DOA”) on April 11, 2016, which was one day before the year anniversary of Ms. Glover’s death. On April 15, 2016, the Patient’s Compensation Fund (“PCF”) sent a letter to Ms. Lindsey acknowledging receipt of the complaint requesting a medical review panel, advising that Ochsner was a qualified health care provider, indicating that she would have to provide the complete name of Dr. Obie and/or Dr. Arden within, 45 days of the postmark of, the notice, and advising that a filing fee of $100 per qualified defendant must be received by the PCF within 45 days of the postmark, “in accordance with R.S. 40:1231.8(A)(l)(c).” The letter further provided that if the PCF did not receive the filing fee within 45 days of the postmark of the letter, the request for a medical review panel would be rendered “invalid and without effect.” Because the- PCF’s letter was postmarked April 15, 2016, the 45-day period ended on May 31, 2016. The Glover family subsequently retained counsel, and on May 27, 2016, they filed via facsimile a “First Supplemental and Amending Complaint and Request for Medical Review,” identifying “Dr. Obie” as Dr. Ifeanyi Iwuchukwu | sand naming additional health care providers as defendants, namely Dr. Erica Diggs, Dr. Joshua Goldberg, and Dr. Shahrzad Talebi-Nejad. A copy of a check for $500 was included with the facsimile.[2] In addition, the original of the First Supplemental and Amending Complaint and the check for $500 were mailed via certified mail on May 27, 2016. The Division of Administration received the check and the original of the “First Supplemental and Amending Complaint” on June 2, 2016. ' Also on June 2, 2016, the PCF sent Ms. Lindsey a' letter stating that her April of 2016 request for a medical review panel was “invalid and without effect,” because the PCF did not receive the filing fees within the time allowed by law and plaintiffs failed to timely identify the complete name of Dr. Obie and/or Dr. Arden. Thereafter, on June 8) the PCF sent a letter to counsel for the Glovers, acknowledging that it received the May 27, 2016 request for a medical review panel and $500 in filing fees on June 3, 2016, confirming that all five defendants were qualified health care providers, and assigning a new file number to the amended complaint. On August 24, 2016,' all of the defendants, • except Dr. Goldberg, filed a-peremptory exception of prescription in the 24th Judicial District Court, requesting that the medical review panel proceedings based on the May 27, 2016 amended complaint and all medical malpractice claims against these defendants be dismissed as untimely. They argued that the initial request for a medical review panel' filed on April 11, 2016, was rendered invalid for failure to timely pay the required filing fees and thus, it did not suspend the time within which plaintiffs had to file their complaint. They assert that without suspension of the time limitations, plaintiffs’ “supplemental” request for a medical review panel filed on March 27, L2016 was untimely. After a hearing, the trial court rendered a judgment on November 22, 2016, granting defendants’ exception of prescription.[3] On December 13, 2016, Dr. Goldberg filed an exception of prescription, alleging that the claims against him were untimely for the same reasons alleged by the other defendants. After a hearing, the trial court rendered a judgment on January 9, 2,017, granting the exception of prescription and dismissing the claims against Dr. Goldberg with prejudice. Plaintiffs now appeal the trial court judgments granting the exceptions. of prescription and dismissing the claims against all defendants. LAW'AND DISCUSSION On appeal, plaintiffs argue that the trial court erred by granting defendants’ exceptions of prescription, and they set forth several arguments in support of their position. First, plaintiffs contend that their original request for a medical review panel filed on April 11, 2016 should not have been rendered invalid and without effect, because the filing fee was timely paid by sending a check via certified mail within 46 days of the postmark of the PCF’s April 16, 2016 letter. Thus, since the April 11, 2016 request was valid, it suspended the running of prescription against all joint and solidary obligors, and the supplemental request for a medical review panel filed via facsimile and certified mail on .May 27, 2016 was timely. Defendants respond that pursuant to the PCF’s April 15, 2016 letter and La. R.S. 40:1231,8(A)(l)(c), the filing fee of $100 per qualified. defendant must be received by the PCF within 45 days of the postmark of the PCF notice. Defendants assert that plaintiffs’ payment of the filing fees was untimely, where the check .for |Bthe fees was mailed within 45 days of date of the PCF letter, but not received until after this 45-day period. At the time plaintiffs’ requests for a medical review panel were filed, La. R.S. 40:1231.8(A)(l)(c) provided: [4] A claimant shall have forty-five days from the mailing date of the confirmation of receipt of the request for review. .. to pay to the board a filing fee in the amount of one hundred dollars per named defendant qualified under this Part. (Emphasis added.) . La. R.S. 40:1231.8(e) provided that failure to timely pay the required filing fee of $100 per qualified defendants “shall render the request for review of a malpractice claim invalid and without effect,”, and the invalid request shall not suspend the time within which the malpractice suit must be instituted. La; R.S. 40:1231.8(A)(l)(c) did not specify whether a payment mailed by certified mail within the time limitations was sufficient to comply-with the requirement , “to pay,” or whether the payment had to be received within the 45-day period. Interpretation of the term “to pay”-is crucial to a determination of whether the filing fee was timely paid. •The interpretation of any statutory provision starts yfith the language of the statute itself. Dejoie v. Medley, 08-2223 (La. 5/5/09), 9 So.3d 826, 829; Faget v. Faget, 10-188 (La. 11/30/10), 53 So.3d 414, 420. When the wording of a revised statute is clear and unambiguous and its application does not lead to absurd consequences, its language must be given effect, and its provisions must be construed so as to give effect to the purpose indicated by a fair interpretation of the language used. La. C.C. art. 9; La. R.S. 1:4; Cleco Evangeline, L.L.C. v. Louisiana Tax Commission, 01-2162 (La. 4/3/02), 813 So.2d 351, 354, Words and phrases Rshall be construed according to the common and approved usage of the language. La. R.S. 1:3. Laws of limitation, which are in derogation of the general rights of tort victims, are to be strictly construed if there are any ambiguities in the law. David v. Our Lady of the Lake Hosp. Inc., 02-2675 (La. 7/2/03), 849 So.2d 38,47. However,, the .rule of strict construction applies only when the plain language of the statute and the rules of interpretation fail to definitively illuminate the legislature’s intent. David, 849 So.2d at 47. Statutes providing for prescriptive periods are to be strictly construed in favor of maintaining a cause of action. Id. Absent clear, contrary legislative intent, prescriptive statutes, which can be given more than one reasonable interpretation, should be construed, against the party claiming prescription. Williams v. Jackson Parish Hosp., 00-3170 (La. 10/16/01), 798 So.2d 921, 930. Defendants, in support of their exceptions of prescription, rely on this Court’s opinion in In re Benjamin, 14-192 (La. App. 5 Cir. 11/25/14), 165. So.3d 161. In that case, Mr. Benjamin filed a complaint requesting a medical review panel, and the PCF sent him a letter confirming receipt of his request .and indicating that filing fees of $100 per named defendant were due no later than 45 days from the date of that letter. Mr, ¡Benjamin mailed payment of the filing fees by certified letter , prior to the expiration' of the 45-day period, but the letter was returned because it did not have sufficient postage. Benjamin, 165 So.3d at 163. Mr. Benjamin resent the fees to the PCF, but the check was returned for insufficient funds. Mr. Benjamin sent the letter with the filing fees a third time, and it was received by the PCF well after the 45-day period. Id. The defendant filed an exception of prescription asserting that the filing fees were not timely paid, and the trial court granted the exception. On appeal, this Court affirmed, finding that the filing fees were not timely paid and that the request for a medical review 17panel was therefore, invalid and without effect.[5] This Court stated that in order to be paid timely, the filing fees must be received within the 45-day period. Benjamin, 165 So.3d at 164. Plaintiffs, in support of their contention that the filing fees were timely paid, rely on the Second Circuit’s decision in Davis v. State Health Scis. Ctr.-Shreveport (In re Medical Review Panel of Davis), 41,273 (La. App. 2 Cir. 8/25/06), 939 So.2d 539, unit denied, 06-2343 (La. 12/8/06), 943 So.2d 1092. In Davis, Mrs. Davis, the decedent’s wife, filed a timely request for a medical review panel. She received a letter from the PCF indicating that she was required to pay the filing fees within 45 days or her complaint would be rendered invalid and without effect. Mrs. Davis mailed the filing fees via United State Express Mail[6] before expiration of the 45-day time period. However, it was received by the PCF after the 45-day period, and the PCF notified her that her claim was invalid and without effect. Davis, 939 So.2d at 541. Defendant filed an exception of prescription which was granted by the trial court. On appeal, the Second Circuit reversed, finding that the “mailbox rule” should apply. Id. at 543. The Court reasoned that although La. R.S. 40:1299 does not specifically state that the date of mailing is deemed to be the date of payment, the filing of the complaint and the payment of the filing fees are “inexorably joined” and the statute provides that the mailbox rule applies when filing a complaint. The Court stated that it “is logical that the same mailbox rule would apply to the 45-day .period for paying the filing fees.” Davis, 939 So.2d at 543. The facts of the present case are distinguishable from Benjamin because, unlike Mr. Benjamin who failed to pay sufficient postage when the fees were ] ¡¡mailed within the 45-day period, the Glovers mailed the filing fees to the PCF with valid postage via certified mail. Mr. Benjamin’s second attempt to pay the filing fees was unsuccessful, where the check was returned for insufficient funds. This case is similar and more analogous to Davis, where the plaintiffs mailed the filing fees with proper postage during the 45-day period, but the fees were received after the 45-day period. Although we acknowledge that this Court stated in dicta in Benjamin that payment occurs when the filing fees are received by the PCF, that statement was not germane to the decision in that case, where the payment was not properly mailed- prior to the expiration of the 45-day period due to insufficient postage. We find that the mailbox rule applies under the circumstances herein. At the time of plaintiffs’ request for a medical review panel, La. R.S. 40:1231.8(A)(l)(c) did not specify whether the term “to pay” required receipt of the payment or simply mailing the payment within the 45-day time period in order to be timely.[7] Because there are two possible interpretations, we must adopt the one which favors maintaining the action as opposed to barring it. Laws on the same subject matter must be interpreted in reference to each other. La. C.C; art. 13; Tillman ex rel. Tillman v. State, 15-1114 (La. 3/15/16), 187 So.3d 445, 451. We agree with the Second Circuit’s reasoning in Davis that the mailbox rule should apply for the payment of fees, just as it applies to the filing of a medical malpractice complaint. Thus, applying the mailbox rule herein, we find that plaintiffs timely paid the filing fees within 45 days of the April 11, 2016 request for a medical review panel. Having found that the filing fees were paid within 45 days of the PCF’s April 15, 2016 notice, we now must address whether plaintiffs’ April 11, 2016 ^request for a medical review panel was timely filed to preserve their wrongful death and survival actions against defendants. Although both actions arise from a common tort, wrongful death and survival actions are separate and distinct. Taylor v. Giddens, 92-3054 (La. 5/24/93), 618 So.2d 834, 840. La. C.C. art. 3492 governs the prescriptive period for wrongful death actions. Id. at 836. This article states that prescription begins on the date of injury or damage. Thus, a cause of action for wrongful death does not rise until the victim dies. Taylor, 618 So.2d at 841. In the present case, Ms. Glover died on' April 12, 2015. The request for a medical review panel was filed within one year, on April 11, 2016. Thus wé find that plaintiffs’ complaint was timely filed within the prescriptive period for filing a wrongful death action. Accordingly, the trial court erred by granting defendants’ exceptions of prescription as to plaintiffs’ wrongful death claims, and we reverse this ruling. A survival. action comes into existence simultaneously with the existence of the tort and is transmitted to the beneficiaries upon the victim’s death. Taylor, 618 So.2d at 840. La. R.S. 9:5628 sets forth the applicable prescriptive period for survival actions as follows: A. No action for damages for injury or death against any physician..., whether based upon tort, or breach of contract, or otherwise, arising out of patient care'shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at thé latest within a period of three years from the date of the alleged act, omission, or neglect. La. R.S. 9:5628 has been referred to as a “tripartite prescriptive provision,” meaning that the statute has three parts. In re: Medical Review Panel for Claim of Moses, 00-2643 (La. 5/25/01), 788 So.2d 1173. First, a one-year prescriptive! in period, which follows the same time frame as a traditional tort, is the general rule. Id. at 1178. Second, when an injury is not immediate and apparent, there is a discovery exception to the general rule, known as contra non valentum, providing that such actions prescribe one year from the date of discovery of the alleged act, omission, or' neglect. Id. Third, a peremptive period of three years has been placed on all claims, regardless of discovery. Moses, 788 So.2d at 1179. Contra non valentum is a Louisiana jurisprudential doctrine under which prescription may be suspended. Carter v. Haygood, 04-646 (La. 1/19/05), 892 So.2d 1261, 1268. There are four instances where contra non valentum is applied to prevent the running of prescription: 1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff’s action; 2) where there is some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; 3) where' the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause, of action; and 4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant. Id. These categories, thus allow the courts to weigh the equitable nature of the circumstances in each individual case to determine whether prescription will be tolled. Id. In certain circumstances, a doctor’s continuing professional relationship with his patient may give rise to the suspension or interruption of prescription. Carter, 892 So.2d at 1269; Nichols v. Patwardhan, 48,170 (La. App. 2 Cir. 6/26/13), 120 So.3d 322, 324. This interruption or suspension of prescription by the continued existence of a professional relationship is based .on the premise that, thé professional relationship is likely to hinder the patient’s inclination to sue. Carter, 892 So.2d at 1269. JLuThe tolling of prescription that possibly arises out of the continuation of such a special relationship is based on the third category of contra non valentum, where the defendant himself has done some act effectively preventing the plaintiff from availing himself of his cause of action. M; Moses, 788 So.2d at 1180-81, It is the continuation of the special relationship that offers the possibility of correction of the injury and thus, may postpone the' running of prescription. Carter, 892 So.2d at 1269. Therefore, as long as the patient remains in the physician’s care, she could reasonably expect a correction of the tor-tious treatment. Id. This theory, as a form of contra non valentum, is known as the “continuing treatment” rule. Carter, 892 So.2d at 1270. The continuing treatment rule requires a plaintiff to establish the existence of a continuing relationship with the physician, which is more than perfunctory, during which the physician engaged in conduct which served to prevent the patient from availing herself of her cause of action, such as attempting to rectify an alleged act of malpractice. Carter, 892 So.2d at 1271. Prescription runs against a plaintiff who has knowledge of facts that a condition may be the result of improper treatment only if there is no' effort made by the physician to mislead or cover up information available to the plaintiff through inquiry or professional ■ medical advice during the continuing treatment. Id. at 1273. In the present case, applying the continuing treatment rule, the earliest date prescription could have started to run against the Glovers’ survival action was the date of Ms. Glover’s death. After being transferred to Ochsner on March 17, 2015, Ms. Glover allegedly had several problems. According to the Glover family, they had a meeting with Dr. Iwuchukwu near the end of March 2015 to discus's several concerns they had with Ms. Glover’s treatment. According to plaintiffs, Dr. Iwuchukwu explained away their concerns and reassured them that everything was launder control,[8] After the March 2015 meeting, on April 1, 2015, Ms. Glover had surgery to place a PEG tube, which was used to supply nourishment. It is the PEG tube that plaintiffs contend was improperly placed and wa’s lying within the peritoneal cavity, rather than stomach, resulting in the chemical peritonitis that caused Ms. Glover’s death. Because we find that the earliest date prescription could have started to run was the date of Ms. Glover’s death, April 12, 2015,[9] plaintiffs’ April 11, 2016 complaint requesting a medical review panel was timely filed for purposes of preserving their survival action. Thus, the trial co.urt erred by granting defendants’ exception of prescription as to plaintiffs’ survival action. Based on our findings that the exceptions of prescription should not have been granted and must be reversed, we preter-mit discussion of the remaining arguments set forth in plaintiffs’ appeal. DECREE For the foregoing reasons, we reverse the trial court judgment granting the exceptions of prescription filed by defendants, and we remand for further proceedings. REVERSED AND REMANDED ' . A "CVA” is commonly referred to as a stroke. . The check was in the amount of $500 to include the $100 filing fee due for Ochsner and a $100 filing fee for each of the other four health care providers named as defendants, though they had not yet been confirmed by the PCF as qualified health care providers. . On May 2,,2017, this Court noted that the November 22, 2016 judgment did not contain the, appropriate and necessary. decretal language required to invoke this Court’s appellate jurisdiction. Accordingly, this Court ordered the trial court to amend its judgment. On May 2, 2017, the trial court rendered an amended judgment, granting the exception of prescription and dismissing plaintiffs’ claims against Ochsner, Dr. Diggs, Dr. Talebi-Nejad, and Dr. Iwuchukwu, On May 18, 2017, after finding that the name of plaintiff was incorrect in the amended- judgment, this Court ordered the trial court to amend the May 2, 2017 judgment'to properly reflect the name of the parties against whom the judgment was rendered. The trial court issued an amended judgment on May 23, 2017. . Subsequently, La. R.S. 40:1231.8(A)(1)(c) was amended by Acts 2016, No,. 275, § 1, effective August 1, 2016, to provide that a claimant shall have 45 days from the date of receipt, by the claimant of the confirmation of receipt of1 the request for review to pay the board filing fee of one hundred dollars per named defendant. . At the pertinent time in Benjamin, the statutory provision at issue was set forth in La. R.S. 40:1299.47(A)(1)(c). La. R,S. 40:1299.47 was redesignated as La. R.S, 40:1231.8 by H.C.R, No. 84 of the 2015 Regular Session. At the pertinent time in the present case, the provision at issue was contained in La. R.S. 40:1231.8(A)(1)(c). . The Court noted that while the mailbox rule requires that the complaint be sent by certified or registered mail, in order to confirm the date of mailing and receipt, express mail also provides signed statements of the date mailed and the fact of next day delivery. Davis, 939 So.2d at 543. . Although the PCF’s April 15, 2016 letter indicated that the PCF had to receive the filing fees within 45 days of the postmark of the letter, we note that administrative agencies, such as the PCF, cannot adopt rules that shorten a prescriptive period. See Correro v. Ferrer, 16-861 (La. 10/28/16), 216 So.3d 794. . The Glover family contends that in response to their concerns about the original feeding tube being improperly placed, Dr. Iwuchuk-wu assured them that an x-ray was taken and "everything was in place.” Also, according to plaintiffs, in response to their concerns that blood a coming out of Ms. Glover’s mouth during feeding after problems with, the placement of the feeding tube, Dr. Iwuchukwu informed them that the bleeding in her stomach was caused by the stroke, not the tube. . Plaintiffs also maintain that the fourth category of contra non valentum applies, because a reasonable person would not have been put on notice that malpractice had occurred until the autopsy results were received on June 17, 2016. However, we need not make a determination as. to the applicability of this fourth category of contra non valentum because our application of the continuing treatment rule indicates that the date of death is the earliest date prescription could have begun, thereby preserving .plaintiffs’ survival action claims.