NANCY ANDERSON; JOY MANGUNO;
JAYME SONGY, AS CURATOR FOR
MALVINA SONGY; AND JANICE VERDIN,
AS RESPONSIBLE PARTY OF CATHERINE
ROUSSELL; INDIVIDUALLY AND ON
BEHALF OF OTHERS SIMILARLY SITUATED

VERSUS

BOB DEAN, JR.

NO. 22-C-233

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPLICATION FOR SUPERVISORY REVIEW FROM THE
TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 820-839, DIVISION "H"
HONORABLE DONALD L. FORET, JUDGE PRESIDING

July 25, 2022

**JUDE G. GRAVOIS**
**JUDGE**

Panel composed of Judges Jude G. Gravois,
Robert A. Chaisson, and Hans J. Liljeberg

**WRIT GRANTED; JUDGMENT DENYING MOTION TO RECUSE
REVERSED; MOTION TO RECUSE GRANTED; MATTER
REMANDED; STAY LIFTED**

    **JGG**

    **RAC**

    **HJL**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/RESPONDENT,
NANCY ANDERSON, JOY MANGUNO, JAYME SONGY AS CURATOR FOR
MALVINA SONGY, AND JANICE VERDIN AS REPRESENTATIVE OF
CATHERINE ROUSSELL, INDIVIDUALLY AND ON BEHALF OF OTHERS
SIMILARLY SITUATED

     Robert E. Couhig, Jr.
     Donald C. Massey
     Jonathan P. Lemann
     Jason A. Cavignac
     Robert E. Couhig, III
     Blair C. Constant
     Robert T. Martin, II

COUNSEL FOR DEFENDANT/RELATOR,
BOB DEAN, JR.

     H. Minor Pipes, III
     Stephen L. Miles
     Kelsey L. Meeks
     Jennifer S. Martinez

**GRAVOIS, J.**

Defendant/relator, Bob Dean, Jr., seeks this Court's supervisory review of the *ad hoc* judge's May 18, 2022 ruling which denied relator's Motion to Recuse the Hon. Donald "Chick" Foret as presiding judge over this matter. For the following reasons, we grant this writ application, reverse the *ad hoc* judge's ruling which denied relator's Motion to Recuse, grant the Motion to Recuse, and remand this matter to the trial court for further proceedings. Further, the stay issued by this Court in this matter on May 24, 2022 is hereby lifted.

<u>FACTS AND PROCEDURAL BACKGROUND</u>

This is a putative class action lawsuit for damages that was brought individually and in a representative capacity on behalf of residents of various nursing homes in the New Orleans area who were evacuated in the wake of Hurricane Ida to a warehouse in Independence, Louisiana. Defendant/relator, Mr. Dean, is alleged to be the owner of the subject nursing homes. The case was assigned to Judge Donald "Chick" Foret's division of the 24th Judicial District Court.

A status conference was held in the matter before Judge Foret on May 4, 2022. Near the conclusion of the status conference, Judge Foret raised the issue of a conflict of interest with counsel present and asked Ms. Suzette Bagneris, an attorney involved in this case for several of the plaintiffs, about her affiliation with Jason Baer, an attorney who is not enrolled in this case. When Ms. Bagneris responded that she did indeed have a business affiliation with Mr. Baer, Judge Foret declared that he may need to recuse himself from this matter. Judge Foret then advised those present that Mr. Baer had been involved in an auto accident on his property. Judge Foret then made some very disparaging and derogatory comments about Mr. Baer, including the use of an expletive, in describing his feelings towards Mr. Baer. It was also revealed that Mr. Baer is represented by

counsel for Mr. Dean, Stephen Miles, in a suit currently pending in the 24th Judicial District Court as a result of said auto accident in which Judge Foret may be a witness.

A few days later, Mr. Dean filed a Motion to Recuse Judge Foret from this matter, asserting that based on Judge Foret's comments at the status conference about Mr. Baer, there is a substantial and objective basis to question whether he would be impartial in this case, given Mr. Baer's close working relationship in other matters with Ms. Bagneris, and Mr. Baer's being a current client of Mr. Dean's counsel in the other suit that involves the auto accident which occurred on Judge Foret's property. As such, the motion argued that there exists a substantial and objective basis that would reasonably be expected to prevent Judge Foret from conducting any aspect of this cause in a fair and impartial manner, and accordingly, justice required recusal. After Judge Foret declined to recuse himself from this matter, the Supreme Court appointed an *ad hoc* judge to hear the Motion to Recuse.[1]

At the contradictory hearing on the Motion to Recuse conducted on May 18, 2022, the court heard testimony from three of the attorneys who were present at the status conference in question and who heard Judge Foret's statements about Mr. Baer.[2] Mr. Miles, counsel for Mr. Dean in this case and also defense counsel for Mr. Baer in the auto accident litigation, testified, as did Philip Watson, defense counsel for the various nursing home defendants in the case. Ms. Bagneris, counsel for a group of plaintiffs in this case, testified regarding her business relationship with Mr. Baer. Finally, Mr. Baer himself testified, part of which was proffered and part of which was before the *ad hoc* judge.

---

[1] Hon. Roland L. Belsome was appointed as *ad hoc* judge to hear the Motion to Recuse.

[2] Judge Foret was not called to testify at the recusal hearing. However, the witnesses who testified were in agreement about the substance and particular words used by Judge Foret at the status conference, as noted below.

Stephen Miles testified first. He stated that he has been very active in this case since earlier in the year when the cases were remanded from federal court. He explained that he had participated in several status conferences with Judge Foret, which were usually "very long," taking hours to conduct and covering many different topics. Near the end of the subject status conference, which had already lasted over three hours, Judge Foret "brought up an issue related to a conflict that he perceived he may have." Mr. Miles explained that while the first three hours of the status conference, which included agenda items, were on the record with a court reporter, at some point the court reporter left to deal with childcare issues. It was after the court reporter left that Judge Foret brought up the issue of his potential conflict.

Mr. Miles testified that Judge Foret raised the issue of his potential conflict himself, saying that he had "heard from someone" that Ms. Bagneris was a "partner" with Mr. Baer, and he thought that he may have to recuse himself as a result of that relationship. Mr. Miles testified that before this revelation, he was unaware of any issue between Judge Foret and Mr. Baer.

At this point, Mr. Miles testified, Judge Foret told those present that Mr. Baer had threatened physical violence against him and that he (Judge Foret) had reported it to the FBI. Mr. Miles testified that Judge Foret's comments "indicated that he didn't think he could be fair with respect to - - because [ ] Ms. Bagneris and Mr. Baer had a relationship." Mr. Miles recalled that Judge Foret then "used an expletive to describe Mr. Baer,"[3] which "shocked" Mr. Miles, as he had "never seen that before." Judge Foret then continued to disclose his dislike of Mr. Baer. Mr. Miles testified that he then felt compelled to immediately disclose to Judge Foret that he had been hired by USAA Insurance, Mr. Baer's automobile liability

_____

[3] When later asked to specifically state the expletive used by Judge Foret to describe Mr. Baer, Mr. Miles responded, "[t]he phrase that I recall is 'piece of s--t.'"

carrier, to defend Mr. Baer in the auto accident suit. Because Judge Foret's comments directed at Ms. Bagneris were so strong, Mr. Miles felt that Judge Foret should also know of his connection to Mr. Baer. At this point, Judge Foret asked if this was the suit involving Mr. Baer's sister (who was a guest passenger with Mr. Baer). When Mr. Miles confirmed that it was, Judge Foret told them that Mr. Baer had hit his tree in his yard. Judge Foret then pulled out his cell phone and showed a video of the accident in his front yard with Mr. Baer's vehicle hitting his tree.

Mr. Miles testified that his impression of the comments by Judge Foret "[a]bsolutely" indicated that Judge Foret would have a problem being fair with anyone who had a relationship with Mr. Baer. Mr. Miles explained that the auto accident suit had since reached an agreement in principle to settle around May 13, 2022 (about a week after the status conference, but before the recusal hearing on May 18, 2022), but that the funding had not yet happened and settlement documents had not yet been signed.[4] Mr. Miles was unsure if Judge Foret's claims that Mr. Baer had threatened him with violence were related to that suit, but felt it likely, and was unsure whether Judge Foret might assert a property damage claim regarding the accident on his property in the future.

Mr. Miles repeated that Judge Foret brought up the matter of his animus towards Mr. Baer on his own, and that it was his impression that no one at the status conference knew that he would react in this way regarding Mr. Baer. Mr. Miles testified that at the status conference, after all of these revelations, he told Judge Foret that he would have to look into whether it was appropriate to file a motion to recuse.

---

[4] Mr. Miles explained in greater detail on cross-examination that because it was a multiparty suit and other people had to agree to the settlement, including funding it, he could not state with certainty that his relationship with Mr. Baer via that suit was concluded or likely to be concluded soon.

On cross-examination, Mr. Miles confirmed that he first looked into the recusal issue before talking to Mr. Baer. He confirmed that he did not bring the motion on behalf of Mr. Baer, who was not enrolled in this suit or otherwise involved as a witness in this suit. Mr. Miles testified that he brought the Motion to Recuse because the judge was "very clear" by his words and actions that "it mattered" to him that there was a connection between a lawyer in this case and Mr. Baer, and Judge Foret's use of an expletive to describe Mr. Baer and his comments made it clear to him that he could not be fair to anyone who had a connection with Mr. Baer.

On redirect examination, Mr. Miles "absolutely" denied that filing of the Motion to Recuse was a delay tactic. He felt that Judge Foret's comments at the status conference created a real issue that resulted in an appearance of impropriety and actual bias such that neither side could get a fair hearing. He felt that Judge Foret's comments were so strong against Mr. Baer, words that he had never heard from a judge before, that even the ending of his and Ms. Bagneris's relationships with Mr. Baer would not change Judge Foret's inability to be fair to both sides. In Mr. Miles's words, "you can't undo it; You can't unring the bell." He also stated that he expected that Judge Foret could potentially be a witness in the auto accident suit, and further that he himself or other people at the recusal hearing could potentially be witnesses, too, in other possible litigation arising from the events of the status conference.

Attorney Philip Watson testified next. Mr. Watson represents corporate defendants in this case, which are several LLCs and corporations that run the nursing homes owned by Mr. Dean. He was also present at the aforementioned status conference where Judge Foret disclosed his animus towards Mr. Baer.

Mr. Watson's recollection of the status conference was much the same as Mr. Miles's recollection. He testified that the parties discussed matters on an

agenda, but then, shortly after the court reporter was dismissed, Judge Foret asked Ms. Bagneris if she knew Mr. Baer. When she said she did, and that they were partners, Judge Foret volunteered that he may have to recuse himself. He asked all counsel to come up to the bench and put on some music, "like on a sidebar." Mr. Watson said that there were only attorneys in the room and he didn't know why they had to approach the bench. The first thing Mr. Watson heard as he got to the bench was Judge Foret's statement that he had made an FBI complaint about Mr. Baer, but he didn't hear why. At this point, Mr. Watson recalled Judge Foret "certainly" used an expletive, and thinks he said "something to the effect of 'I don't give a s--t if he knows how I feel about him.'"

Mr. Watson testified that he did not remember *verbatim* what Judge Foret said, but clearly recalled that an expletive was used and disparaging comments were made about Mr. Baer, which gave him an impression that "there was a clear animus that Judge Foret held against Mr. Baer." He remembered Mr. Miles then telling Judge Foret that he represented Mr. Baer in the auto accident suit, whereupon Judge Foret showed the attorneys the video of the accident from his phone, and that "there was a bit of a back and forth about the nature of that case."

Mr. Watson noted that Judge Foret brought up the issue of Mr. Baer himself, and that it was "[a]bsolutely" a significant issue for Judge Foret. Mr. Watson stated that he perceived "a lot of animosity" on the judge's part towards Mr. Baer.

Mr. Watson said that it was "completely inaccurate" that the Motion to Recuse had been brought to delay this litigation, noting that this was an issue Judge Foret brought up himself, not the defense, and he was not sure that any party knew about Judge Foret's connections with Mr. Baer before this status conference.

On cross-examination, Mr. Watson agreed that Judge Foret's revelations took place after the court reporter had been dismissed, and that her need to leave by a certain time had been discussed earlier, with no party objecting thereto. Mr.

Watson stated that had the court reporter been there when Judge Foret brought up the conflicts matter, he certainly would have asked that the entire matter be put on the record. Mr. Watson agreed that at no time during the status conference did Judge Foret express any animus towards him, his firm, or any other defense lawyer or firm, or any plaintiffs' counsel or firm. Mr. Watson also expressed that he did not feel that Judge Foret's comments about Mr. Baer were an attack on Ms. Bagneris, but rather that his concern was over their partnership or relationship. Mr. Watson also noted that he personally had no relationship with Mr. Baer and had never heard of him before Judge Foret's comments.

Suzette Bagneris testified next. She stated that she had a joint venture in this suit with other plaintiffs' attorneys present in the courtroom, and that she also had had a joint venture (an LLC entitled "Bagneris and Baer, LLC") through her law firm with Mr. Baer's law firm to handle Hurricane Ida insurance property damage cases in Houma, Louisiana. She testified that she dissolved the joint venture LLC with Mr. Baer's firm as of May 17, 2022, the day before the recusal hearing, which process of dissolution was a result of and began immediately after Judge Foret's disclosures at the status conference on May 4, 2022, even prior to the Motion to Recuse being filed. She testified that she dissolved the joint venture with Mr. Baer's firm because she felt too strongly about this litigation to jeopardize any of those claims. However, she also testified that she "wasn't concerned with what Judge Foret said" because he prefaced his remarks with "if you are his partner" and she is not and has never been Mr. Baer's partner. She did not feel that Judge Foret had any animus towards her, but the nature of Judge Foret's allegations concerned her because of her "affiliation" with Mr. Baer "in view of those allegations." She testified that her firm's joint venture with Mr. Baer's firm did not make them business partners, and that Mr. Baer has no involvement in the suits against Mr. Dean. She further testified that she believed Judge Foret could be fair and

impartial towards her because she has never been a "partner" of Mr. Baer's, which was the word Judge Foret used. She admitted that if her relationship with Mr. Baer's firm had been a partnership instead of a joint venture, she had a "concern about whether he [Judge Foret] could be fair" in this suit.

Jason Baer testified next. He confirmed that he was not enrolled or involved in these suits before Judge Foret, and that he had no pecuniary interest in this matter. He testified that he had been informed by both Ms. Bagneris and Mr. Miles (who was conducting his direct examination) that Judge Foret had said some derogatory things about him at the May 4 status conference. He denied ever threatening Judge Foret with physical violence. He testified that he and Judge Foret were neighbors and never had "any animosity directly." He said he was appalled and shocked that a judge would say these things about him and then act completely oppositely in front of him. At this point, he stated that he would feel absolutely uncomfortable appearing in front of Judge Foret, knowing what he had said about him at the May 4 status conference.

Mr. Baer acknowledged that Mr. Miles represents him in the auto accident case that caused property damage to Judge Foret's tree, which happened on January 31, 2021. He testified that Judge Foret had not sued him, but that he could be a witness in the case, which had settled in principle. Mr. Baer agreed that he wanted to testify in the recusal hearing "to clear" his name after the "appalling" remarks made by Judge Foret. He said that he "fully supported" Ms. Bagneris's dissolution of their joint venture because he did not want to jeopardize this case.

At the conclusion of his testimony, Mr. Baer proffered testimony outside the presence of the *ad hoc* judge regarding what he had heard from others as to what Judge Foret had said about him.[5]

---

[5] The proffered testimony was properly objected to as hearsay, as Mr. Baer was not present at the subject status conference.

Thus, in summary, the following events that unfolded at the subject status conference were recounted in sworn testimony at the recusal hearing:

- Ms. Bagneris and Mr. Baer both confirmed that they were involved in a business relationship (a joint venture), jointly representing clients in hurricane cases.

- When, at the status conference, Judge Foret learned of this business relationship, he stated that he might have to recuse himself as a result of this relationship.

- Judge Foret then openly expressed an extreme dislike of and animus towards Mr. Baer, making disparaging and derogatory remarks about Mr. Baer, including the use of an expletive.

- The witnesses stated that Judge Foret provided that Mr. Baer allegedly threatened physical violence against him and that Judge Foret had reported the incident to the FBI.

- Mr. Baer is a client of Mr. Dean's counsel in connection with an auto accident lawsuit that is currently pending in the 24th Judicial District Court. Judge Foret confirmed his knowledge of that suit and revealed that it involves an accident in which Mr. Baer crashed an automobile into a tree on his property. Judge Foret showed counsel a video of the accident from his mobile phone and explained that he had interacted with Mr. Baer at the scene of the accident, thus confirming that Judge Foret may be a witness in connection with that matter.

- Although Ms. Bagneris felt that Judge Foret would not hold her relationship with Mr. Baer against her because it was not a "partnership," she nevertheless dissolved her law firm's joint venture relationship with Mr. Baer's law firm, a process that began shortly after the subject status conference and ended the day before the hearing on the Motion to Recuse. Ms. Bagneris stated that she did this in order to not jeopardize her cases in this potential class action.

After closing arguments by the attorneys, the *ad hoc* judge took the matter under advisement. Later that day, the *ad hoc* judge issued a written ruling (with reasons for judgment) denying the Motion to Recuse, finding:

> While there is no dispute that the trial judge expressed animus toward Mr. Baer, there was no evidence to reflect any substantial and objective bias towards any of the parties or attorneys involved in this litigation. In fact, the parties admitted they believed the trial judge could be fair. Moreover, Mr. Baer has no interest or involvement in this litigation; thus, the trial judge's animus towards him is not germane to the recusal issue in this case. Given there are no grounds for recusal under La. C.C.P. art. 151, the motion to recuse is denied.

In his writ application, Mr. Dean asserts the same facts and grounds expressed in his Motion to Recuse, and argues that the *ad hoc* judge erred by applying the wrong legal standard in deciding the Motion to Recuse. He argues that when evaluated under the correct legal standard, the evidence establishes a substantial and objective basis for concluding that Judge Foret may not be able to conduct this case fairly and impartially and that the risk of actual bias on his part is constitutionally intolerable.

## LAW AND ANALYSIS

### *Standard of Review*

In his writ application, relator argues that the *ad hoc* judge erred by applying the wrong legal standard because in his written reasons for judgment, he stated that there was "no evidence to reflect any substantial and objective *bias* toward any of the parties or attorneys involved …," while the newly revised language of Article 151(B) requires a finding of a "substantial and objective *basis*" that would reasonably be expected to prevent the judge from conducting any aspect of the cause in a fair and impartial manner (emphasis added).[6] While initially this argument may seem like mere semantics, the terms *bias* and *basis* refer to two different mandatory grounds for recusal. As explained *infra*, a finding of actual or substantial "bias" is still a mandatory ground for recusal under La. C.C.P. art. 151(A)(4). However, the term "basis" refers to an entirely new, broader mandatory ground for recusal. We are not able to assume that the *ad hoc* judge merely misspoke when he used the term "bias" instead of "basis." The *ad hoc* judge's statements indicate that he may have erroneously applied the incorrect legal standard by only considering the narrower ground of "bias" for recusal and failing to consider the broader grounds of other "bases" for recusal, which is the

_____

[6] We note that "substantial and objective *bias*" is the language first used by relator in his memorandum in support of the Motion to Recuse (emphasis added).

provision under which relator filed his Motion to Recuse.  Under these circumstances, we are compelled to conduct a *de novo* review of the trial court judgment.

Relator's writ application presents an issue of first impression for this Court: whether, under the facts presented at trial, Judge Foret's actions are grounds for recusal under the newly enacted Louisiana Code of Civil Procedure Article 151(B) which states that "[a] judge of any trial or appellate court shall also be recused when there exists a substantial and objective basis that would reasonably be expected to prevent the judge from conducting any aspect of the cause in a fair and impartial manner."  A determination as to the standard required for recusal by this new statutory language is a question of law.  Appellate review regarding questions of law is simply a review of whether the trial court was legally correct or legally incorrect. *Yount v. Handshoe*, 14-919 (La. App. 5 Cir. 5/28/15), 171 So.3d 381, 384.  On legal issues, the appellate court gives no special weight to the findings of the trial court, but exercises its constitutional duty to review questions of law *de novo* and renders judgment on the record.  *Id*.

### Louisiana Code of Civil Procedure Article 151

In 2021, the Louisiana Legislature, on the recommendation of the Louisiana State Law Institute, enacted Act No. 143, a comprehensive revision of the provisions of the Code of Civil Procedure relative to the recusal of judges.  The revision includes significant changes to La. C.C. art. 151 governing the grounds on which a judge is to be recused.  Prior to the revision, Article 151(A) set forth mandatory grounds for recusal by which a judge must be recused, while Article 151(B) set forth permissive grounds for recusal by which a judge may be recused.  Following the revision, the permissive grounds for recusal were moved to new Article 152, which mandates specific disclosures by the judge to all attorneys and unrepresented parties in the cause.  Upon such a disclosure, a party may file a

motion setting forth one or more of the grounds for recusal under Article 151. The mandatory grounds for recusal set forth in Article 151(A) remain nearly identical following the revision, while new language was substituted for Article 151(B).

Article 151 in its present version states, in pertinent part:

A. A judge of any trial or appellate court shall be recused upon any of the following grounds:

  (1) The judge is a witness in the cause.

  (2) The judge has been employed or consulted as an attorney in the cause or has previously been associated with an attorney during the latter's employment in the cause, and the judge participated in representation in the cause.

  (3) The judge is the spouse of a party, or of an attorney employed in the cause or the judge's parent, child, or immediate family member is a party or attorney employed in the cause.

  (4) The judge is biased, prejudiced, or interested in the cause or its outcome or biased or prejudiced toward or against the parties or the parties' attorneys or any witness to such an extent that the judge would be unable to conduct fair and impartial proceedings.

B. A judge of any trial or appellate court shall also be recused when there exists a substantial and objective basis that would reasonably be expected to prevent the judge from conducting any aspect of the cause in a fair and impartial manner.

* * *

The starting point for the interpretation of any statute is the language of the statute itself. *Dejoie v. Medley*, 08-2223 (La. 5/5/09), 9 So.3d 826, 829; *In re Med. Review Panel Proceedings of Glover*, 17-201 (La. App. 5 Cir. 10/25/17), 229 So.3d 655, 661. The paramount consideration in statutory construction is ascertainment of the legislative intent and the reason or reasons which prompted the Legislature to enact the law. *Martin v. Thomas*, 21-1490 (La. 6/1/22), --So.3d --, 2022 WL 2339095 (citing *M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 07-2371 (La. 7/01/08), 998 So.2d 16, 27). When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written with no further interpretation made in search of the Legislature's intent.

La. C.C. art. 9. Where the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. La. C.C. art. 10. When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. La. C.C. art. 12. When analyzing legislative history, it is presumed the Legislature's actions in crafting a law were knowing and intentional, and the Legislature is presumed to have enacted each statute with deliberation and with full knowledge of all existing laws on the same subject. *Louisiana Safety Ass'n of Timbermen Self-Insurers Fund v. Louisiana Ins. Guar. Ass'n*, 09-23 (La. 6/26/09), 17 So.3d 350, 356; *Theriot v. Midland Risk Ins. Co.*, 95-2895 (La. 5/20/97), 694 So.2d 184, 186.

We begin our examination of the text of the newly revised Article 151 with the observation that Paragraph A(4), which provides the mandatory ground for recusal where a judge is biased, prejudiced, or interested in the cause or its outcome or biased or prejudiced toward or against the parties or the parties' attorneys, remains basically identical to the previous iteration of the statute.[7] This language making bias or prejudice a basis for recusal was first added to Article 151 by amendment in 1987. *Pierce v. Charity Hosp. of Louisiana at New Orleans*, 550 So.2d 211, 213 (La. App. 4th Cir. 1989).[8] Since that time, many courts have considered what constitutes bias or prejudice sufficient to require recusal of the judge from a case. *Pierce*, *supra*; *Earles v. Ahlstedt*, 591 So.2d 741 (La. App. 1st Cir. 1991); *Tamporello v. State Farm Mut. Auto. Ins. Co.*, 95-458 (La. App. 5 Cir. 11/15/95), 665 So.2d 503; *Edwards v. Daugherty*, 97-1542 (La. App. 3 Cir. 3/10/99), 729 So.2d 1112; *Guidry v. First Nat. Bank of Commerce*, 98-2383 (La.

---

[7] Only the words "The judge" have been added.

[8] Bias or prejudice has been a ground for recusal in criminal matters under La. C.Cr.P. art. 671 since 1966.

App. 4 Cir. 3/1/00), 755 So.2d 1033; *Couvillion v. Couvillion*, 00-143 (La. App. 5 Cir. 9/26/00), 769 So.2d 747; *S. Casing of Louisiana, Inc. v. Houma Avionics, Inc.*, 00-1930 (La. App. 1 Cir. 9/28/01), 809 So.2d 1040; *Chauvin v. Sisters of Mercy Health Sys., St. Louis, Inc.*, 01-1834  (La. App. 4 Cir. 5/8/02), 818 So.2d 833; *In re Succession of Manheim*, 03-282 (La. App. 4 Cir. 10/15/03), 859 So.2d 836; *Johnson v. Spurlock*, 07-949 (La. App. 5 Cir. 5/27/08), 986 So.2d 724, 728; *Radcliffe 10, L.L.C. v. Zip Tube Sys. of Louisiana, Inc.*, 07-1801 (La. App. 1 Cir. 8/29/08), 998 So.2d 107; *Covington v. McNeese State Univ.*, 10-250 (La. 4/5/10), 32 So.3d 223; *Slaughter v. Bd. of Sup'rs of S. Univ. & Agr. & Mech. Coll.*, 10-1114 (La. App. 1 Cir. 8/2/11), 76 So.3d 465; *Tolmas v. Par. of Jefferson*, 12-555 (La. 4/27/12), 87 So.3d 855; *W.G.T. v. E.A.A.*, 14-4 (La. App. 5 Cir. 9/10/14), 150 So.3d 339; *Dussouy v. Dussouy*, 16-1316 (La. App. 4 Cir. 5/10/17), 220 So.3d 197, 200; *England v. England*, 16-936 (La. App. 4 Cir. 6/28/17), 223 So.3d 582; *In re Eleanor Pierce (Marshall) Stevens Living Tr.*, 17-111 (La. App. 3 Cir. 10/4/17), 229 So.3d 36; *Menard v. Menard*, 19-580 (La. App. 3 Cir. 3/11/20), 297 So.3d 82.

This jurisprudence has generally held that the language of Paragraph A(4) requires a finding of *actual* bias or prejudice which must be of a substantial nature and based on more than conclusory allegations.  *Covington*, 32 So.3d at 225.[9] Clearly, by keeping this language in the text of Article 151, the Legislature did not intend to abrogate this jurisprudence.  Nevertheless, applying this law to the case *sub judice* would be legal error, because defendant has filed his Motion to Recuse Judge Foret specifically on the grounds of the newly enacted La. C.C.P. art. 151(B), and did not identify or argue Paragraph A(4) as a basis for the recusal.

---

[9] The Louisiana Supreme Court has also held that, "absent direct evidence that the judge is biased or prejudiced to such an extent that he would be unable to conduct fair and impartial proceedings, where the circumstantial evidence of bias or prejudice is so overwhelming that no reasonable judge would hear the case, failure of a judge to recuse herself is a violation of the Code of Judicial Conduct as well as the Louisiana Constitution." *In re Cooks*, 96-1447 (La. 5/20/97), 694 So.2d 892, 903.

22-C-233                                    14

Such identification of the grounds for recusal is required under La. C.C.P. art. 154(A) which states in part, "[a] party desiring to recuse a judge of a district court shall file a written motion therefor assigning the ground for recusal under Article 151." Since defendant has not assigned Paragraph A(4) as a basis for Judge Foret's recusal, an evaluation of his actions under that standard would be erroneous.

We turn next to the newly added language of Paragraph B:

B. A judge of any trial or appellate court shall also be recused when there exists a substantial and objective basis that would reasonably be expected to prevent the judge from conducting any aspect of the cause in a fair and impartial manner.

The use of the word "shall" excludes the possibility of being "optional" or even subject to "discretion," but instead "shall" means imperative, of similar effect and import with the word "must." *Louisiana Fed'n of Teachers v. State*, 13-0120 (La. 5/7/13), 118 So.3d 1033, 1051. It is clear then that Paragraph B creates an additional mandatory ground for recusal. This is confirmed by the new comments to Article 151 which state:

(b) A new Paragraph B has been added to provide an additional mandatory ground for recusal when a substantial and objective basis exists that would reasonably be expected to prevent the judge from conducting any aspect of the cause in a fair and impartial manner. This provision is intended to serve as a catch-all supplementing the mandatory grounds for recusal set forth in Paragraph A and to incorporate a clearer, more objective standard than the language of Canon 3C of the Code of Judicial Conduct, which provides that a judge should recuse himself when "the judge's impartiality might reasonably be questioned."

(c) This Article and Article 153(B) are intended to set forth the exclusive grounds for the recusal of a judge in a civil proceeding.

Prior to the 2021 amendment, courts examining Article 151 have held that it contained the exclusive grounds for recusal of a judge and specifically declined to apply the standard set forth in Canon 3(C) of the Code of Judicial Conduct. *See Edwards*, 729 So.2d at 1120; *Guidry*, 755 So.2d at 1037; *W.G.T.*, 150 So.3d at 352.

*But see Folse v. Transocean Offshore USA, Inc.*, 04-1069 (La. 5/7/04), 872 So.2d 467, 468; *Disaster Restoration Dry Cleaning, L.L.C. v. Pellerin Laundry Mach. Sales Co., Inc.*, 05-0715 (La. 4/17/06), 927 So.2d 1094; *Dussouy*, 220 So.3d at 200.

The Code of Judicial Conduct consists of a series of canons which not only provide guidance and instruction, but demand ethical conduct and the avoidance of unethical conduct or practices. *In re Lemoine*, 96-2116 (La. 1/14/97), 686 So.2d 837, 841, *on reh'g*, 96-2116 (La. 4/4/97), 692 So.2d 358. The purpose of these canons is to preserve the integrity and independence of the judiciary, and its provisions are construed and applied to further that objective. Louisiana Code of Judicial Conduct Canon 1. The Code of Judicial Conduct is binding on all judges, and violations of the Canons contained therein may serve as a basis for disciplinary action. *In re Denton*, 21-1801 (La. 3/25/22), 339 So.3d 574. Under La. Const. art. V, § 25(C), the Louisiana Supreme Court has original jurisdiction in judicial disciplinary proceedings.[10] Canon 2(A) requires that a judge "shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Canon 3(C) states the requirements for recusal in the Code of Judicial Conduct.[11] Prior to its revision in 1996, this paragraph provided simply that "[t]he recusation of judges is governed by law." *In re Lemoine*, *supra*. The law in question specifically referred to the laws governing recusal found in the Code of Civil Procedure and the Code of Criminal Procedure. In 1996, the language of this Canon was revised to its current form which states:

> C. Recusation. A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be

---

[10] It is important to distinguish between recusal cases brought pursuant to the Code of Civil Procedure and the Code of Criminal Procedure, and those disciplinary cases considered by the Supreme Court. While both concern recusal, disciplinary cases are decided using a higher "clear and convincing" evidentiary standard.

[11] Paragraph A(4) of Canon 3 also states "[a] judge shall perform judicial duties without bias or prejudice."

questioned and shall disqualify himself or herself in a proceeding in which disqualification is required by law or applicable Supreme Court rule. In all other instances, a judge should not recuse himself or herself.

Under this language ("shall" and "should"), a judge continues to be bound by the Code of Judicial Conduct to recuse himself or herself pursuant to the grounds for recusal stated in La. C.C.P. art. 151; however, it adds an additional permissive, but hortatory basis for recusal "where the judge's impartiality might reasonably be questioned." This language comes from the American Bar Association's Model Code of Judicial Conduct Canon 3(C) adopted in 1974. Since that time, this standard, which is known as the "appearance of impropriety" standard, has been adopted in many states and in federal courts. *See* 28 U.S.C. §455 ("Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."). Compliance with this standard remains voluntary in Louisiana.

As previously stated, we must assume that the Legislature was aware of the laws of recusal when it drafted and enacted the newly revised Paragraph B in Article 151. Had the Legislature intended to adopt the appearance of impropriety standard, it could have done so. It did not. Instead, the Legislature decided to adopt new language intended to be clearer and more objective than the appearance of impropriety standard.

In adopting this new language, the Legislature clearly intended to broaden the mandatory grounds for recusal beyond the previously enumerated grounds, including the ground for bias or prejudice enumerated in Paragraph A(4). Whereas prior law recognized this mandatory ground for recusal only where there was a high probability of actual bias (proved either directly or circumstantially), the addition of Paragraph B recognizes that there may be instances in which actual bias or prejudice cannot be proven, but which nonetheless require the recusal of the

judge. These instances occur where there exists a "substantial and objective basis that would reasonably be expected to prevent the judge from conducting any aspect of the case in a fair and impartial manner." The words "substantial" and "objective" present the first two requirements. "Substantial" means something of substance, material, real, and not imaginary. Black's Law Dictionary (11th ed. 2019). This may be understood as requiring the mover to support his motion to recuse with material evidence, and not mere allegations. "Objective" means something externally verifiable, as opposed to the feelings of one individual. *Id.* "Basis" means some foundation or starting point on which something may rest. *Id.* This is a broad term clearly intended to cover more instances than solely "bias." The phrase "any aspect of the cause" additionally broadens the scope of this ground for recusal beyond the obvious and public aspects of the judge sitting on the bench in the courtroom. Finally, the phrase "reasonably expected" recognizes that there may be substantial and objective bases claimed that a neutral observer would not expect to prevent the judge from trying the cause in a fair and impartial manner.

Whether the requirements of this new ground for recusal in Paragraph B are met will necessarily vary to some degree depending on the facts and circumstances of each case: the conduct complained of and the relationships and interests involved. In determining whether a recusal is necessary under Paragraph B, a judge's decision should be guided by the twin imperative duties of a judge: to try the case fairly and impartially on the one hand, and on the other to promote public confidence in the integrity and impartiality of the judiciary.

***Application of these principles to the case sub judice***

With these principles in mind, we now turn to the case before us. We begin by observing that this Motion to Recuse arose because of Judge Foret's spontaneous comments in open court that he may have to recuse himself. These

*sua sponte* statements raised the question of the judge's ability to be impartial in the minds of all observers. This is evidenced not only by the testimony of the attorneys filing the Motion to Recuse, but also by the testimony of Ms. Bagneris who, though stating that she believed in Judge Foret's ability to try the case impartially, nevertheless undertook measures to dissolve her business arrangements with Mr. Baer in response to Judge Foret's comments. While Ms. Bagneris may have belief in the judge's ability to remain fair and impartial, it is apparent she also believed that others looking at the case may have doubts. Additionally, the animus publicly displayed by Judge Foret in crude and expletive language towards a non-party, Mr. Baer, could cause a reasonable observer to wonder to whom such animus may be next directed, particularly anyone who had any type of relationship with Mr. Baer.

Upon *de novo* review, and under the particular facts and circumstances of this case, we find that Judge Foret's comments created a substantial and objective basis that would reasonably be expected to prevent him from conducting any aspect of the cause in a fair and impartial manner. A judge is required to be impartial. A judge on the bench questioning his own ability to try the case impartially as Judge Foret apparently did cannot help but undermine public confidence in the judiciary and raised doubts where previously there were none. Subsequent assurances to the contrary are like trying to close the barn door after the horse has bolted.

In so holding, we make two important distinctions. First, we distinguish Judge Foret's comments from those mandatory disclosure requirements articulated in La. C.C.P. art. 152. The purpose of such disclosures is to further public confidence in the judiciary by elucidating relationships and circumstances that may provide grounds for recusal under Article 151. In contrast, *sua sponte* comments questioning one's own ability to remain impartial undermine this purpose. Second,

in so holding, we reiterate that our analysis is limited to the grounds for recusal stated in defendant's motion, Article 151(B). We make no findings pursuant to Article 151(A)(4) as to whether the evidence introduced into the record at trial proves, directly or circumstantially, any bias or prejudice held by Judge Foret towards any of the attorneys or parties involved in this cause.

To conclude, La. C.C.P. art. 151(B) provides a new mandatory ground for the recusal of judges. After examining the requirements of the language of this new article and reviewing the evidence *de novo*, we find that there exists a substantial and objective basis that would reasonably be expected to prevent Judge Foret from conducting any aspect of the cause in a fair and impartial manner. We make no findings pursuant to La. C.C.P. art. 151(A)(4) regarding any actual bias or prejudice by Judge Foret towards any of the attorneys or parties because this ground was not assigned by defendant in his Motion to Recuse.

### DECREE

For the foregoing reasons, this writ application is granted, the *ad hoc* judge's ruling denying the Motion to Recuse filed by Bob Dean, Jr. is reversed, the Motion to Recuse is granted, the Hon. Donald "Chick" Foret is hereby recused from presiding over this matter, and the matter is remanded to the trial court for further proceedings. Further, the stay issued by this Court in this matter on May 24, 2022 is hereby lifted.

**WRIT GRANTED; JUDGMENT DENYING MOTION TO RECUSE REVERSED; MOTION TO RECUSE GRANTED; MATTER REMANDED; STAY LIFTED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
INTERIM CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **JULY 25, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 22-C-233

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE DONALD L. FORET (DISTRICT JUDGE)

| | | |
|---|---|---|
| JASON A. CAVIGNAC (RESPONDENT) | ROBERT T. MARTIN, II (RESPONDENT) | H. MINOR PIPES, III (RELATOR) |
| JENNIFER S. MARTINEZ (RELATOR) | KELSEY L. MEEKS (RELATOR) | STEPHEN L. MILES (RELATOR) |
| MADRO BANDARIES (RESPONDENT) | STEVEN J. RANDO (RESPONDENT) | SUZETTE P. BAGNERIS (RESPONDENT) |
| PHILIP G. WATSON (OTHER) | | |

### MAILED

BLAIR C. CONSTANT (RESPONDENT)
DONALD C. MASSEY (RESPONDENT)
JONATHAN P. LEMANN (RESPONDENT)
ROBERT E. COUHIG, III (RESPONDENT)
ROBERT E. COUHIG, JR. (RESPONDENT)
ATTORNEYS AT LAW
1100 POYDRAS STREET
SUITE 3250
NEW ORLEANS, LA 70163

EMILE A. BAGNERIS, III (RESPONDENT)
ATTORNEY AT LAW
1929 JACKSON AVENUE
NEW ORLEANS, LA 70113